(February 6, 1894.)

IN RE BADGER.

[35 Pac. 839.]

An original proceeding in this court upon petition for dis-
barment, petition granted and the attorney disbarred.

HUSTON, C. J.—Information was filed against the respond-
ent by Hon. George Ainslie, on behalf of the bar association of
the third judicial district, under the provisions of title 4, page

429, of the Revised Statutes of Idaho, charging him with violation of his oath as an attorney, and of his duties as such and of being guilty of false representation and fraudulent practices as an attorney, involving moral turpitude, in this: "1. That the said J. W. Badger, being then employed as an attorney in and about certain matters relating to desert land entries in the United States land office at Boise City, Idaho, did on or about the sixteenth day of February, A. D. 1893, at Boise City aforesaid, corruptly instigate, suborn, and persuade one Aldora Abbott to be and appear in the land office aforesaid, and subscribe and make oath to an affidavit to be used in said land matters, and to falsely and fraudulently personate and represent herself to be one Cordelia M. Wing, who had prior thereto made a desert land entry at said office, all of which more fully appears by reference to the complaint of C. S. Kingsley, subscribed and sworn to before Jonas W. Brown, United States commissioner, on October 21, 1893, a copy of which said complaint is hereto attached, and marked exhibit 'A,' and made a part of this information." The matter was referred to a committee composed of three members of the bar of this court, to take testimony and make report of findings. This duty has been performed by said committee, and the court has carefully and thoroughly examined the report of the committee, and the evidence upon which said report is based, and has duly considered the arguments of counsel upon the report and evidence, and will now give the result of its deliberations.

There is no duty imposed upon a court more important than that of preserving to the best of its power and ability, the professional integrity and purity of its bar. Courts are established for the administration of law and justice. The attorneys who constitute its bar are an integral part of the court. Without them, the court would be a dead engine, so far as the accomplishment of the ends of its creation go. The duties and obligations imposed upon the judges of courts are no more binding or obligatory than are those to which their position constrains the attorneys who constitute the bar of the court. The professional conduct of each and every member of the bar is a matter in which all are specially interested. No member has

the right, nor should be permitted, to so conduct himself in his profession as to bring reproach upon the guild. There was a time when any scoff or jibe the poet or the romancer saw fit to cast upon the lawyer was received, without question, as deserved obloquy. But that rule has never obtained in this country. The history of the legal profession in this country is the history of the republic. America can proudly and fearlessly challenge comparison of her lawyer sons with any that the world has ever produced. No grander models can be found for the student of the law than our own country presents. And it should be the earnest desire and endeavor of every member of the profession that the standard of professional excellence be not lowered. That unworthy members will be found in the ranks is inevitable; "for where's the palace whereinto foul things sometimes intrude not?" While the standard of ability and integrity of the American bar is second to none, it is to be regretted that defections from the line of professional duty are becoming disturbingly frequent. Perhaps, under all the circumstances, this is less a matter of surprise than regret. Lawyers are only men, and subject to the same influences that act upon other men; and it would perhaps be unjust to expect that, in an age and a country where the worship of the golden calf has become the accepted and almost universal creed, the legal profession alone should be excluded from the shrine. But the lawyer, if he is a lawyer in the true acceptation of the term, will ever temper his devotion at that altar with the recognition of those eternal truths which he has drawn from the fountain head of jurisprudence. I cannot myself conceive how a man with ordinarily honest instincts, who has been a careful and thoughtful student of Coke, Blackstone, Kent, and Story, can ever be induced to resort to unscrupulous and dishonest methods in the practice of his profession. It may be that it is to the lack of familiarity with the writers mentioned that some of the looseness so painfully apparent in the practice of some members of the profession is attributable. Perhaps another reason for the lowering of the professional standard may be found in the monstrously heretical idea which many, both professional and profane, have of what constitutes true

professional success.   To be a lawyer is and should be under-
stood and recognized as being well versed in the law, and pos-
sessed of ability to make a just and proper application thereof
to the facts in a given case.   It is an erroneous and unreliable
rule which gauges the ability of a lawyer by the number of cases
he wins in the courts of first instance.   The true test should be,
Did he show that he was thoroughly conversant with the law
of the case, and did he ably and honestly make a just and
proper application of the law to the facts? and not the simple
inquiry, "Did he get away with the case?"   No matter what
the means resorted to may have been, though to reach it he may
have been obliged to

> "Distort the truth, accumulate the lie,
> And pile the pyramid of calumny."

The attainment of the end sanctified the means, no matter
how unprofessional, dishonest, or vile.

And I apprehend it is to an overweening desire for temporary
and ephemeral success, unrestrained by knowledge or recogni-
tion of those ethical principles which underlie all the writings
and teachings of the fathers of the profession, that much of
the moral decadence of the legal profession is attributable.   The
lawyer who, to secure success, either for himself or his client,
will violate, willfully and knowingly, either the express or im-
plied obligations of his professional oath, is on a par with the
minister of the Gospel who, to gratify his avarice, would drag
the pure vestments of the altar through the turbid pools of
mercenary traffic, or, to encompass an unholy ambition, would
"hang the tatters of a political piety upon the cross of an in-
sulted Saviour."   The restraints which both the common and
civil laws laid upon lawyers in matters of compensation for
their services have been greatly relaxed, but the reasons which
prompted this relaxation were beneficent, and the action should
not be made to serve the purposes of oppression or cupidity.
There is no reason why a lawyer should not acquire wealth, as
well as another, if he does it honestly and legitimately; but as
his temptations, in the way of opportunity, are greater than
others, so are his obligations to keep strictly within the lines

of probity and integrity. And that in so doing he is adopting the course best calculated to insure success, all experience verifies. Go through the ranks of the profession in this country or elsewhere, and it will be found to be a rule, with scarcely an exception, that the successful members of the profession are those who have practiced upon lines of strictest integrity, and it is a matter of just pride to the profession that deviations from the line of duty are exceptional. The rule given by Burns to his young friend Aiken may well be adopted by every member of the profession as a check upon his zeal either for the acquisition of pecuniary results or the attainment of professional success:

> "But where you feel your honor grip,
> Let that aye be your border;
> Its slightest touches, instant pause—
> Debar all side pretenses;
> And resolutely keep its laws,
> Uncaring consequences."

Had the respondent in this case been governed by such a rule, the painful duty imposed upon this court would have passed by us.

Mr. Badger, stand up. As one member of this court, I can assure you I entertain for you only feelings of the profoundest commiseration. I will not add to the painful humiliation of your position by commenting upon the circumstances of your case, further than to say that the court has carefully and critically examined the evidence upon which the findings of the committee are based, and we approve and adopt them. It is the order and judgment of the court that you deliver to the clerk of this court the certificate of admission as a member of the bar of this court heretofore issued to you, and that your name be stricken from the roll of attorneys of this court.

Morgan and Sullivan, JJ., concur.