In re Steen.

In re Walker.

In re Marshall.

In re Franklin.

In re Howie.

(In Banc. April 13, 1931.)

[134 So. 67. Nos. 29417, 29416, 29418-29420.]

**T. N. Gore,** of Marks, **J. T. Brown, Franklin, Easterling & Rosenthal,** and **Louis C. Hallam,** all of Jackson, and **Carl Marshall,** of Gulfport, for respondents.

Jeff Truly, of Fayette, J. H. Currie, of Meridian, W. S. Welch, of Laurel, W. C. Sweat, of Corinth, L. A. Smith, Sr., of Holly Springs, and Louis M. Jiggitts, of Jackson, for Committee on Petitions for Disbarment.

Argued orally by **Carl Marshall**, and **Lamar F. Easterling**, for motion, and by **J. H. Currie**, against motion.

**Griffith, J.**, delivered the opinion of the court.

Acting under a resolution adopted by the State Bar Association, a special committee of that association has instituted in this court a proceeding for the disbarment of the respondent Steen, who is a member of the bar here. The charge against respondent is the bribery by or through him of a state officer. If this charge be true, it would follow that respondent would with equal readiness bribe a witness, or a juror, or, if possible, a judge of a court, wherefore, instead of being a fit minister in the law he would be a menace to its administration.

But the sufficiency of the charge as stating an adequate ground for disbarment is not questioned. The

challenge is to the jurisdiction of this court; and the contention is, first, that this court, having no jurisdiction except that which "properly belongs to a court of appeals," can take no cognizance of this proceeding because filed here in the first instance, instead of having been instituted in a circuit or chancery court; and, second that, if this court has jurisdiction, it is only concurrent with those courts and the matter should be transferred to a court of original jurisdiction of the county of the residence of respondent.

When it was first announced in the public press that the association proposed to institute these proceedings in this court instead of the circuit or chancery court, there was, perhaps, no member of this court who did not at once reject the thought, although, of course, only as a first impression, that this court could or would take jurisdiction or entertain the proceedings in any manner except upon appeal from a nisi prius court. So long unbroken had been the ordinary routine of acting here only upon records certified from tribunals of original jurisdiction, and so long had the members of this court been trained under the oft-repeated pronouncement that "the proper jurisdiction of the supreme court is only to review and revise the judicial action of an inferior tribunal, and the exercise of such incidental jurisdiction of a quasi-original character as is necessary to preserve its dignity and decorum and to give full and complete operation to its appellate powers," that it hardly seemed possible, upon first approach, that the court could be shown to have the power and duty to entertain any such a proceeding as this, filed here in the first instance.

But, when the proceedings were actually filed here and we began the task of investigation, we soon found that, in order to reject the jurisdiction, we would not only have to overrule expressly our own case of Ex parte Brown, 1 How. 303, but we would have to qualify the language of, and in that respect in the main overrule, Ex parte Cashin, 128 Miss. 224, 90 So. 850, and we would

be compelled also in some manner to do away partly with the language of section 3703, Code of 1930, and then, all this done, we would find ourselves standing alone as the only supreme court in this country which had denied the jurisdiction, save only in one or two cases where recognition was accorded to statutes which had expressly conferred the sole jurisdiction on other courts. We have examined nearly fifty cases from Maine to California where the supreme courts have taken jurisdiction in the first instance of disbarment proceedings; and, in the absence of restrictive statutes, we have found only one case which denied the jurisdiction, namely, In re Waugh, 32 Wash. 50, 72 Pac. 710, and that case was subsequently qualified, and in effect overruled, by the same court, In re Robinson, 48 Wash. 153, 92 Pac. 929, 15 L. R. A. (N. S.) 1525, 15 Ann. Cas. 415.

The answer of respondent to this impressive, not to say overwhelming, array of cases upholding the jurisdiction, is that, in nearly all the states from which these cases come, the power to admit to the bar is vested in the supreme court of the state, that it is upon this basis, and this foundation only, that all those courts have justified their jurisdiction to disbar; and it is argued that this is, in fact, the true foundation for the jurisdiction taken in the Brown case, supra, that is to say, at the time that case was decided the power to admit was vested in the supreme court of the state, then called the "high court." In the examination of this contention by respondent, we have taken some thirty of those cases, which seem to be the more often cited, and which may therefore be classed as leading, and have endeavored to group them approximately into four classes: (A) Those wherein the language of the court would indicate that the jurisdiction of the supreme court to disbar was considered as derivative of its power to admit; (B) those wherein the jurisdiction has been placed upon the ground that the power and duty is inherent in the court as one

of the constitutional superior courts of the state; (C) those wherein both the foregoing grounds are referred to; and (D) those wherein neither of said grounds are expressly mentioned; and to the list we add (E), those which, although upholding the jurisdiction of the supreme court, hold further that the appellate court is not obliged to exercise the jurisdiction in all cases; and we further add (F), a list of cases on appeal which contain valuable discussions of the general principles, some of them carrying interesting and pertinent historical reviews:

A.  State v. Edmunson, 103 Or. 243, 251, 204 Pac. 619; Sanborn v. Kimball, 64 Me. 140; In re Breen, 30 Nev. 181, 93 Pac. 997, 17 L. R. A. (N. S.) 572; State Bar Commission v. Sullivan, 35 Okla. 745, 754, 131 Pac. 703, L. R. A. 1915D, 218; People v. MacCabe, 18 Colo. 186, 32 Pac. 280, 19 L. R. A. 231, 36 Am. St. Rep. 270.

B.  State ex rel. v. Reynolds, 252 Mo. 378, 380, 158 S. W. 671; In re Raisch, 83 N. J. Eq. 108, 109, 90 A. 12; In re Cohen, 261 Mass. 484, 159 N. E. 495, 55 A. L. R. 1309; In re Stolen, 193 Wis. 602, 214 N. W. 379, 216 N. W. 127, 55 A. L. R. 1355; In re Sizer, 300 Mo. 369, 377, 254 S. W. 82; State v. Woerndle, 109 Or. 461 466, 209 Pac. 604, 220 Pac. 744.

C.  The People v. Berezniak, 292 Ill. 305, 315, 127 N. E. 36; In re Thatcher, 80 Ohio St. 492, 653, 656, 89 N. E. 39; In re Gorsuch, 113 Kan. 380, 384, 385, 214 Pac. 794; In re Olson, 116 Wash. 186, 189, 198 Pac. 742; In re Lambuth 18 Wash. 478, 51 Pac. 1071; In re Simpson, 9 N. D. 379, 404, 83 N. W. 541; In re Robinson, 48 Wash. 153, 92 Pac. 929, 15 L. R. A. (N. S.) 525, 529, 15 Ann. Cas. 415.

D.  In re Ashley, 146 Cal. 600, 80 Pac. 1030; In re Wellcome, 23 Mont. 140, 58 Pac. 45; People v. Hanson, 316 Ill. 502, 507, 147 N. E. 431; In re Macy, 109 Kan. 1, 196 Pac. 1095, 14 A. L. R. 848; People v. Green, 7 Colo. 237, 3 Pac. 65, 49 Am. Rep. 351; In re Tyler,

78 Cal. 307, 20 Pac. 674, 12 Am. St. Rep. 55; In re Badger, 4 Idaho 66, 35 Pac. 839; In re Freerks, 11 N. D. 120, 90 N. W. 265; In re Duncan, 64 S. C. 461, 42 S. E. 433; In re Lentz, 65 N. J. Law, 134, 46 A. 761, 50 L. R. A. 415; In re Evans, 22 Utah, 366, 62 Pac. 913, 53 L. R. A. 952, 83 Am. St. Rep. 794; Ex parte Brown, 1 How. 303, 306; In re Whitehead (Eng.), L. R. 28, Chan. Div. 614.

E. In re Thatcher, 80 Ohio St. 492, 656, 89 N. E. 39; In re Ashley, 146 Cal. 600, 80 Pac. 1030; In re Freerks, 11 N. D. 120, 135, 90 N. W. 265; Legal Club v. Light, 137 Va. 250, 119 S. E. 55; People ex rel. v. Berry, 17 Colo. 322, 29 Pac. 904.

F. Brooks v. Fleming, 6 Baxt. (65 Tenn.) 331, 337; State v. Kirke, 12 Fla. 278, 95 Am. Dec. 314; In re Smith, 73 Kan. 743, 85 Pac. 584; Smith v. State, 1 Yerg. (Tenn.) 228; State v. Mosher, 128 Iowa 82, 103 N. W. 105, 5 Ann. Cas. 984; In re Durant, 80 Conn. 140, 67 A. 497, 10 Ann. Cas. 539; Bar Ass'n v. Casy, 211 Mass. 187, 97 N. E. 751, 39 L. R. A. (N. S.) 116, Ann. Cas. 1913A, 1226; People v. Culkin, 248 N. Y. 465, 162 N. E. 487; 60 A. L. R. 851; Ex parte Cashin, 128 Miss. 224, 90 So. 850, 851; Ex parte Wall, 107 U. S. 265, 2 S. Ct. 569, 27 L. Ed. 552; In re Hardwick (Eng.) L. R. 12 Q. B. 148; Ex parte Brounsall (Eng.) 2 Cowp. 830, 98 Eng. Reprint, 1385.

The inescapable conclusion derived from all this wealth of authority is that the text is sound and accurate when in 2 Thornton on Attorneys, sections 765 and 767, it is stated that there is no necessary connection between the power to admit to practice and the power to disbar for subsequent misconduct, and that an appellate court possesses the latter power on a proceeding instituted therein. The authorities, in our opinion, overwhelmingly sustain the proposition that "the supreme court may, as a part of its inherent jurisdiction, investigate the conduct of attorneys at law and remove them from office

. . . if found guilty of conduct incompatible with fundamental honesty, or which discloses a moral turpitude inconsistent with the standards necessary to be maintained among the members of the legal profession.''

It is an undoubted fundamental principle, as applied to the superior governmental establishments created by the Constitution, that each of these establishments has the power, implied in the grant of existence, to take such essential measures of preservation and protection as will insure to that establishment its continued and unimpaired existence, not only, but that it shall have the inherent or implied power to avail of such necessary means as to insure the beneficial execution of the high governmental duties imposed on the particular superior establishment or department thus concerned. For it is not to be supposed that a Constitution designed to stand for all time should contain essential institutions and superior departments which would be unable to preserve their existence and usefulness in like perpetuity with the Constitution itself, or should, without power to forfend, be subject to any such intrusions or invasions upon the rightful performance of its duties as would render it incompetent to the great objects for which the constitutional department or institution was created.

And there could hardly be any serious denial of the assertion that the trained and learned lawyer of dependable moral character is an indispensable assistant in the operation of the intricate machinery of efficient government, especially in the courts, to say nothing of the necessity of his presence in the manifold and almost infinite complexities of commercial and civil life. Gratitude for the past would incline us to make this admission, even if candor and common observation in respect to the present did not compel it. Indeed, the Constitution itself has recognized the fact, and has declared that the recognition shall be permanent, for it has, by apt provision, made the continuance of the superior courts,

therein established conditional, in effect, upon the continued existence of the legal profession, because in its sections 150 and 154, Const. 1890, it expressly ordains that no person shall be eligible to the office of judge of the supreme court, of the circuit court, or of the chancery court, who shall not have been a practicing attorney and citizen of the state for five years.

Since, then, the learned lawyer of trustworthy character is essential not only to the continued existence of these three superior courts, but is necessary, as well, to the efficient and beneficial performance of the appointed duties of said courts, it follows inevitably, under the principles stated, that the disciplinary power of disbarment or suspension belongs to each of them as inherent in its creation, establishment, and organization, as something which in the nature of things, belongs to them and to each of them. And thus the jurisdiction and the correlative duty falls even within the rigid definition laid down in Fuller v. State, 100 Miss. 811, 817, 57 So. 806, 807, 39 L. R. A. (N. S.) 242, Ann. Cas. 1914A, 98, wherein it was said that ''the inherent powers of a court are such as result from the very nature of its organization, and are essential to its existence and protection, and to the due administration of justice.'' And thus it is, too, that we may now, after the elapse of nearly one hundred years, look back upon the Brown case, and can affirm the soundness of the pronouncement therein contained that the supreme court has the power, with or without the aid of statute, to strike from the roll of attorneys, and that the power is incidental to all superior courts, and ''is necessary to the preservation of decorum, and the respectability of the profession;'' and we can affirm the accuracy of conception reflected in the language of this court in the Cashin case, where it is stated that ''a proceeding to disbar an attorney is neither a civil nor a criminal action; its purpose is not to punish, but to annul the right of

the attorney to practice, which is for the protection of the court. . . . It is a proceeding sui generis, on account of the relation of the attorney to the court. . . . 'The power to declare this forfeiture is a summary one inherent in the courts, and exists . . . that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. . . . The action of the court in the exercise of this power is judicial in its character, but the inquiry made is "in the nature of an investigation by the court into the conduct of one of its own officers, not the trial of an action or suit," and the order entered is but an exercise of the disciplinary jurisdiction which it has over such officers.' . . . It is an exercise of judicial power in the regulation of the court's own officers, and . . . this power is therefore at once necessary to protect the court, preserve the purity of the administration of justice and maintain the integrity of the bar.''

It will be noticed that we have made but little reference to section 3703, Code 1930, which provides that the power to disbar an attorney may be exercised ''by any court in which he may practice.'' This brevity of reference to the said statute has been because we would gravely doubt whether such a statute of its sole force, rather than as declaratory of an existent power, could confer the jurisdiction on this court. We must not be understood, however, as intimating an opinion that the legislative authority to regulate this subject does not include the power to vest the exclusive jurisdiction of disbarment in the trial courts or in one or more of them, if the legislature should hereafter deem it wise so to do, and should enact an adequate statute to that end.

Turning now to the alternative feature of the motion of respondent that, in the event this court holds that the jurisdiction in the Supreme Court is concurrent

with that in the circuit and chancery courts, this matter be transferred to one or the other of those courts in the county of the residence of respondent, we have fully noted the grounds upon which this course is urged. These may be briefly summarized as follows: (1) That it is the general policy of our law that in personal actions, not local in their nature, the defendant has the right to be heard in tribunals of the county of his residence, and thereupon (2) the right of appeal, so that this court of appeals can review a completed record in the calm and deliberate atmosphere which belongs to an appellate court, and which often is impossible in a nisi prius tribunal; (3) that this court of appeals has no appropriate machinery for the hearing here of a matter such as this, and to so undertake, along with the several others of like character, recently filed in this court, would entrench seriously upon the regular docket of this court and divert its course from the prompt dispatch of its appellate business; and (4) that it would be oppressively expensive, ruinous in the time required of respondent away from his home and business, if obliged to attend at the state capital.

We have considered most maturely the matters just mentioned, and may say at once that they have constituted the most serious obstacles to the conclusion which we have reached. But, having been compelled yield to authority and to admit jurisdiction, we can discover no legitimate power, and it would be unbecoming in us, to rid ourselves of this matter by transferring it to another court, for that would be to hold that we have jurisdiction and immediately and as a part of the same opinion to wholly decline it. We hold, it is true, that we have concurrent jurisdiction with the circuit and chancery courts; but, so holding, we can do no less than accept our fair share of these investigations, and may not, by the exercise of mere power, put off all this disagreeable business upon our brethren of the other su-

perior courts. Moreover, the charge here is of the bribery of a state officer. The inquiry therefore is one which is state wide in its essential nature; it annexes itself to the very precinct and environs of the seat of the state government.

We recognize, and are in accord with, the general policy of our law contended for, that in personal actions transitory in their nature the defendant has the general right to be heard in the local tribunals of his residence; but we have endeavored, under the authorities, to show that this is no action at law or suit in equity. It is not a litigation, but is an investigation or inquisition, conducted under the direction of the court, in the pursuit of which there are no adversary parties. True, the proceedings have been initiated by the State Bar Association, but we make no doubt that, instead of that body being adversary here, the majority of its members would be most happy if at the end of that investigation the charges shall be found to be unsupported in actual fact, and that the respondent shall thereupon be honorably discharged from the rule. But even if, in respect to venue, the proceedings are to be likened to a suit, then by an analogy equally admissible here, it could be said that those who exercise public or quasi-public franchises and privileges can make no just objection to being held to answer within the locality where the cause of action accrued, or the act complained of occurred, or was designed to become finally effective.

In the Cashin case, supra, this court has said that, in disbarment proceedings, the court must and will exercise the power to determine the method of procedure to be followed, affording all reasonable opportunity to be heard, and for a fair hearing, without oppression or injustice. This course we shall endeavor, prudently and impartially, to pursue now, and that, without undue expense or any unreasonable requirement of attendance here, if indeed any requirement of attendance here at

all shall be made, except in the arguments. As to the procedure, we shall be willing to hear counsel upon any agreement they be disposed to make in that respect, and, if available and consonant to our sense of propriety, we may, in all probability, accept and observe agreements in that regard. Otherwise we shall outline and announce the procedure when the pleadings have been settled.

The judgment of the court is that the motion to dismiss, and, in the alternative, to transfer, is overruled. And, unless he has already done so, respondent is required to answer to the merits on or before April 23, 1931, and the committee may move in respect to the answer, if deemed by it requisite, on or before May 2, 1931; the procedure in the two foregoing respects to be likened to answers in chancery and to the motions to strike, as outlined by sections 378, 379, 380, 383, 386 and 389, Code 1930; copies of all papers filed are to be sent, under the usual rules, to counsel. Tuesday, the 5th day of May, 1931, at nine-thirty a. m., is hereby fixed as the day when the court will sit to hear this matter further on the pleadings and on the procedure. So ordered.

MEMORANDUM—The opinion and decision on the above motion also decides the petitions for disbarment and motions to dismiss proceedings or transfer, in the following; No. 29416, J. C. Walker; No. 29418, Carl Marshall; No. 29419, L. C. Franklin; No. 29420, J. H. Howie.

Smith, C. J., and Cook, Anderson, and McGowen, JJ., concur in the opinion.

Ethridge, J., delivered the dissenting opinion.

I take it that there is no question about the power of the Constitutional Convention to partition the judicial power of the state among the various courts which it deems necessary to create, and give to each court such

jurisdiction as it sees proper, and to limit the jurisdiction of any court to a particular subject or subjects, on which the judicial power acts. By section 144 of the Constitution of 1890 the Constitutional Convention vested the entire judicial power of the state in the courts created by the Constitution. It provides: "The judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this Constitution." The entire judicial power is therefore vested by the Constitution in the courts named or provided for in the Constitution. This covers judicial power in all the applications and forms and as to all subjects upon which it operates.

In section 156 of the Constitution the circuit court is given original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law. The original jurisdiction therefore is vested in the circuit court in all cases in which the judicial power may be exercised, where the Constitution has not vested that original jurisdiction in some other court. This was expressly held in the case of Power v. Robertson, 130 Miss. 188, 93 So. 769.

The Constitution, sections 159, 160, and 161, gives to the chancery court original jurisdiction in certain enumerated cases.

Section 171 of the Constitution gives the original jurisdiction to justices of the peace in cases of civil matters involving two hundred dollars or less, and in all misdemeanors.

In all cases not enumerated in these various sections of the Constitution itself the circuit court has original jurisdiction. The grant of jurisdiction to the circuit court, it will be observed from the reading of the language thereof, is not specific, but is general, and embraces all kinds of original jurisdiction not vested by the Constitution itself in some other court.

By section 172 of the Constitution it is provided: "The legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient." The jurisdiction that can be conferred upon these special courts is some part of the jurisdiction vested by the Constitution in some other court, and is not an exclusive jurisdiction, but is a concurrent jurisdiction with some other court.

Section 146 of the Constitution of 1890 confers jurisdiction upon the Supreme Court. It reads: "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals." This section of the Constitution has been construed in numerous cases, and it has been held in these cases that it has no original jurisdiction but only appellate jurisdiction. In determining the jurisdiction of the Supreme Court, the definition of the words "appellate jurisdiction" and the definition of the words "original jurisdiction" become important. It was manifestly the purpose of the Constitutional Convention to have an appellate court whose time should be exclusively devoted to the discharge of its duty in deciding appeals from other courts. In Words and Phrases, Second Series, vol. 1, page 248, we find the following definition of appellate jurisdiction:

" 'Appellate jurisdiction, of a court is the power and authority conferred on a superior court to rehear and determine causes tried in inferior courts."

" 'Appellate jurisdiction' is the power to take cognizance of and review proceedings had in an inferior court, irrespective of the manner in which they are brought up, by appeal or writ of error."

" 'Appellate jurisdiction' is defined as the jurisdiction which a superior court has to rehear causes which have been tried in inferior courts, and the very expression 'appellate jurisdiction' refutes and contradicts any idea of filing new pleadings, and framing and settling issues in a court of such jurisdiction."

" 'Appellate jurisdiction' necessarily implies that the subject-matter has been instituted in and acted upon by some other court whose judgment or proceedings are to be reviewed. While this jurisdiction may be exercised in a variety of forms and in any form which the Legislature may prescribe, the substance of the jurisdiction must exist before the form can be applied to it. It is the power vested in a superior tribunal to review and revise the judicial action of an inferior tribunal."

In Words and Phrases, First Series, vol. 1, page 452, under the title "Appellate Jurisdiction," are numerous definitions, from which I quote the following:

" 'Appellate jurisdiction' is the power vested in a superior tribunal to review and revise the jurisdiction of an inferior tribunal."

" 'Appellate jurisdiction' is defined to be the power and authority conferred upon the Supreme Court to hear and determine causes which have been tried in inferior courts."

" 'Appellate jurisdiction' is the power to take cognizance of a review of proceedings had in an inferior court, irrespective of the manner in which they are brought up, whether by appeal or by writ of error."

" 'Appellate jurisdiction' embraces the right to review the final judgments of the courts of original jurisdiction, or, in other words, the right to reverse, affirm, or modify them, and to enforce by some mandatory process the judgment of the appellate tribunal."

" 'Appellate jurisdiction,' strictly speaking, is exercised by revising the actions of inferior courts and remanding the cause for the rendition and execution of the proper judgment."

" 'Appellate jurisdiction,' as used in Constitution, article 3, section 10 (Kan.), providing that the Supreme Court shall have such 'appellate jurisdiction' as may be provided by law, means to revise and correct the proceedings in a cause already instituted, and necessarily im-

plies that the subject-matter has already been instituted and acted on by some other court whose judgment or proceedings are to be revised. The fact that there has been a decision, however, is not sufficient, but there must have been a decision by a court clothed with judicial authority and acting in a judicial capacity. The tribunal from which an appeal lies need not be called a 'court,' but it must be one having the attributes of a court—a tribunal where justice is judicially administered.''

In Marbury v. Madison, 1 Cranch, 137, 175, 2 L. Ed. 60, it is defined: ''It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. Although, therefore, a mandamus may be directed to courts, yet to issue such a writ to an officer for the delivery of a paper, is in effect the same as to sustain an original action for that paper, and therefore seems not to belong to appellate, but to original jurisdiction.''

Our court has in numerous decisions, above quoted, limited the jurisdiction conferred upon the Supreme Court to strictly ''appellate jurisdiction.'' In Planters' Ins. Co. v. Cramer, Hume and McCown, 47 Miss. 200, decided in 1872 under the Constitution of 1869, limiting the jurisdiction of the Supreme Court to such jurisdiction only as belongs to a court of appeals, it was held that the words of the Constitution, article 6, section 4 (Constitution 1869), included in the jurisdiction of this court only such power as is revisory, and excluded all original jurisdiction, and that the mode theretofore used for bringing causes into the court of last resort was continued under the existing laws. At page 206 of the report, the court said: ''We think the constitution and the statute meant by the words, ''jurisdiction which properly belongs to a supreme court,'' to include only such as was of a revisory character, and to exclude all which was purely original. The mode which has been

heretofore used for the removal of causes into this court of last resort, is continued under the existing law. The right of removal is limited to final judgment, 'except in cases particularly provided for by law.' There is no intimation in the statute that this court may exercise original jurisdiction, except in aid of its appellate power, where the suit has been brought for review. Unless the claim to a supervisory power over inferior jurisdictions, as exerted by the superior courts in England, can be grounded upon the words, 'properly belongs to a supreme court, as used in the constitution, it has no foundation. In our view. these words were intended to set forth the supremacy of this tribunal over other courts, because of its power to revise and review their judgments and decrees. In this sense it is as to them supreme. This interpretation is supported, when considered in connection with the grant of jurisdiction to the circuit courts, and chancery courts.''

In Illinois C. R. Co. v. Dodd et al., 105 Miss. 23, 61 So. 743, 49 L. R. A. (N. S.) 565, it was held that the words ''such jurisdiction as properly belongs to a court of appeals'' means that under the Constitution the ''Supreme Court shall have such jurisdiction as properly belongs to a court of appeals, which includes only such as is of a revisory character, and necessarily implies that the matter revised must be a judicial decision rendered by a tribunal clothed with judicial power.'' In that case the court declared a statute enacted by the Legislature which granted appeals direct from the railroad commission to the Supreme Court was void. In the course of the opinion the court said: ''The jurisdiction which properly belongs to a court of appeals includes only such as is of a revisory character, and necessarily implies that the matter revised must be a judicial decision, rendered by a tribunal clothed with judicial power. . . .'' The opinion also quoted from Judge Story and his Commentaries on the Constitution as follows: ''The es-

sential criterion of appellate jurisdiction is that it revises and corrects the proceedings of a cause already instituted, and does not create that cause. In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted in and acted upon by some other court, whose judgment or proceedings are to be revised.''

In Yazoo & M. V. R. Co. v. Wallace, 90 Miss. 609, 43 So. 469, 122 Am. St. Rep. 321, the court declared a statute of the Code of 1906, section 4910, purporting to deprive the circuit courts of power to grant defendants new trials for excessive verdicts and to authorize the Supreme Court alone to require remittiturs, to be unconstitutional. At page 614 of the Mississippi Report (43 So. 469, 470), the court said: ''This statute is plainly unconstitutional and void. It is for the benefit of plaintiffs. It shuts out defendants from having complete and final disposition of their rights in a forum provided by the organic law for all, and into which they have been forced by plaintiffs. It compels them to appeal which otherwise they might not wish to do, and then concludes with a clause, as a salve, by attempting, in the very face of the Constitution, to give the Supreme Court original, instead of mere appellate jurisdiction.''

In Wynne et al. v. Illinois Cent. R. Co., 108 Miss. 376, 66 So. 410, it was held that the Supreme Court could not entertain and try a writ of prohibition. In the course of the opinion in this case, the court, at page 378 of the Mississippi Report (66 So. 410) said: ''If the petition be treated as having been presented to the court as such, and not to the judges thereof, it will be sufficient to say that the only power which has been conferred upon that court to issue a writ of the character here set forth is power so to do, when necessary, in aid of its appellate jurisdiction. This petition is, in effect, nothing more than an indirect appeal from an

order of the circuit court, for which no direct appeal has been provided by law."

In Peirce v. Halsell, 90 Miss. 171, 43 So. 83, 84, it was held that "the Supreme Court having only appellate jurisdiction, will not decide what was expressly pretermitted in the court of original jurisdiction." In concluding the opinion in that case, the court said: "All that is left is whether there was a partnership, and this is not decided. As we are only a revisory court, we do not decide what was expressly pretermitted in the decision of the chancery court, and therefore, while we must reverse; we remand for full adjudication."

In Edwards v. Kingston Lumber Co. 92 Miss. 598, 46 So. 69, it was held: "Where the trial court, pretermitting one of two questions involved in a case, erroneously decided the other, the Supreme Court in reversing the judgment will not finally adjudicate the rights of the parties but will remand the cause for further action by the trial court."

In Robertson v. Southern Bitulithic Co. et al., 129 Miss. 453, 92 So. 580, 581, it was held that under section 146 of the Constitution, the only jurisdiction which the Legislature can confer upon the Supreme Court is to review and revise the judicial action of an inferior tribunal, and such incidental jurisdiction of a quasi original character as is necessary to preserve its dignity and decorum and to give full and complete operation to its appellate powers. In that case a stenographer was sought to be punished for failure to file his notes. In discussing the jurisdiction in the case the court said: "Under section 146 of the Constitution the Legislature can confer upon the Supreme Court only 'such jurisdiction as properly belongs to a court of appeals,' and the proper jurisdiction of such a court is only 'to review and revise the judicial action of an inferior tribunal' (3 C. J. 356; [Illinois Cent.] Railroad Co. v. Dodd, 105 Miss. 23, 61 So. 743, 49 L. R. A. (N. S.) 565), and such incidental juris-

diction 'of a quasi original character as is necessary to preserve its dignity and decorum and to give full and complete operation . . . to its appellate powers' (Brown v. Carraway, 47 Miss. 668; 'Planters' Ins. Co. v. Cramer, 47 Miss. 200).''

In Brown v. Sutton (Miss.), 121 So. 835, 837, it was held that under section 146 of the Constitution the Supreme Court has no power to alter, amend or correct records of trial courts in respect to contents or recitals of those records. In the course of the opinion the court said: ''The jurisdiction of this court is fixed by section 146, Constitution . . . Under this section, the proper jurisdiction of this court is only '''to review and revise the judicial action of an inferior tribunal,'' . . . and such incidental jurisdiction ''of a quasi-original character as is necessary to preserve its dignity and decorum and to give full and complete operation . . . to its appellate powers'' ' ''—citing authorities.

In Ocean Springs Bank et al. v. Frederick, 145 Miss. 553, 110 So. 366, 367, it was held that ''it is no part of the duty of the Supreme Court, and it is without power, to coerce the officers of the courts below into the performance of the duties which they owe, not to the Supreme Court, but to the courts of which they are officers. Such power and duty rests with the courts below.''

In Planters' Oil Mill v. Yazoo & M. V. R. Co., 150 Miss. 813, 117 So. 242, an effort was made to have the Supreme Court consider original exhibits introduced in the trial below which had not been made part of the record in transcribing the stenographer's notes. In that case we held that the perfecting of a record in the court below, and the making of a bill of exceptions therein, are duties belonging to the trial court, and, if any of the exhibits are illegible so as to make it difficult or impossible to copy them, the circuit judge or chancellor may hear and determine the matters involved and perfect the bill of exception.

In St. Louis & S. F. R. Co. v. Bridges, 156 Miss. 206, 125 So. 423, we reversed a case because the trial judge refused to pass upon the question of the excessiveness of the verdict, sending the whole case up here for the Supreme Court to decide. At page 216 of the Mississippi Report (125 So. 423, 426) the court said: " 'The Supreme Court can grant a new trial only in such cases as that it was the duty of the lower court to grant a new trial. The Supreme court is exclusively a court of appeals, and as such its power are confined to correcting errors committed in the trial courts. It would be an anomaly for this court to grant a new trial in a case in which the lower court had no such power.' . . . It has always been the constitutional policy in this state to withhold from the Supreme Court any powers except those that are appellate."

In Sussman, Wormser & Co. v. Sea Food Co., 130 Miss. 632, 94 So. 795, 796, at page 636 of the Mississippi Report, this court said: "The Supreme Court can grant a new trial only in such cases as that it was the duty of the lower court to grant a new trial. The Supreme Court is exclusively a court of appeals, and as such its powers are confined to correcting errors committed in the trial courts. It would be an anomaly for this court to grant a new trial in a case in which the lower court had no such power."

In Gwin v. Fountain (Miss.), 132 So. 559, on the suggestion of error, we held: "The Supreme Court is a court of appellate jurisdiction only, and cannot decide issues of fact which have been pretermitted by the court below, nor decide issues of fact by considering evidence which was excluded by the lower court."

All of these cases by the Mississippi Supreme Court construing the meaning of section 146 of the Constitution would seem to leave it unnecessary to cite other authorities, but similar holdings have been held in many states where there was no other jurisdiction than ap-

pellate jurisdiction vested by their Constitutions. I desire simply to call attention to two of the cases from other states. In Freitag v. Union Stock Yard & Transit Co., 262 Ill. 551, 104 N. E. 901, it was held: "The provision of the constitution concerning the appellate jurisdiction of the Supreme Court does not mean that such jurisdiction is conferred in all cases except those in which it has original jurisdiction, but means that in all cases other than those in which the court is given original jurisdiction, its jurisdiction, whether derived immediately from the constitution or from a statute, is appellate jurisdiction, only."

In Fine v. Lawless, 140 Tenn. 453, 205 S. W. 124, it was held that the phrase "appellate jurisdiction" refutes any idea of framing and settling issues in a court of such jurisdiction in regard to a matter of fact transpiring pending the appeal. At page 455 in 140 Tenn., 205 S. W. 124, the court said: "It is manifest that there is thus raised an issue that we cannot pass upon. To do so would be to exercise original jurisdiction, whereas our jurisdiction is appellate in character. 'Appellate jurisdiction' of a case involving such an issue necessarily implies that the issue has been formulated and passed upon in some inferior tribunal."

As seen above, section 156 of the Constitution of 1890 gives to the circuit court original jurisdiction in all cases which are not given by the Constitution itself to some other court. It is therefore manifest that the Constitution was providing the courts that should entertain original jurisdiction, and it intended that all original jurisdiction should be vested in courts inferior to the Supreme Court, and that the Supreme Court did not have thrust upon it any original jurisdiction whatever, and the Legislature being powerless to thrust it upon the Supreme Court, the court could not rightfully assume it itself.

In Words & Phrases, First Series, vol. 6, page 5058, under title "Original Jurisdiction," it is said:

"The phrase 'original jurisdiction,' as used in Revised Statutes, article 2, chapter 69, section 3, as amended, limiting the jurisdiction of the district court, and conferring upon it original jurisdiction in certain cases, means jurisdiction to entertain cases in the first instance, as distinguished from appellate jurisdiction. Castner v. Chandler, 2 Minn. 86, 88 (Gil. 68, 71).

"Constitution, article 6, section 6 [California], declares: 'The district courts shall have "original" jurisdiction in law and equity in all civil cases where the amount in dispute exceeds two hundred dollars; in all criminal cases not otherwise provided for, and in all issues of fact joined in the probate courts their jurisdiction shall be "unlimited." ' In considering the question whether the word 'unlimited' qualifies the character of the jurisdiction fixed by the term 'original,' or whether it qualifies the specified limitation as to the amount in value fixed in the first paragraph of the section, the court said: 'We are compelled to decide in favor of the latter proposition. The term "original" is a general term of limitation, contradistinguished from the term "appellate," which latter defines the jurisdiction of the Supreme Court.' "

It will be seen, therefore, that, while the circuit and chancery courts and the justice of the peace courts are given specific original jurisdiction by the Constitution, it does not prevent the Legislature from conferring upon other courts concurrent original jurisdiction, because section 172 expressly authorized the creation of inferior courts. In Crowell v. Lambert, 10 Minn. 369 (Gil. 295), it was held that under the Laws of 1862, chapter 18, providing that "the several district courts of this state shall have original jurisdiction in all cases of mandamus" does not mean that such courts shall have exclusive jurisdiction thereof.

In Words and Phrases, Second Series, vol. 3, page 798, original jurisdiction has been defined as follows:

"The phrase 'original jurisdiction' means the power to entertain cases in the first instance as distinguished from appellate jurisdiction, and does not mean exclusive jurisdiction. A court of original jurisdiction is one in which an action has its origin. Burks v. Walker, 109 Pac. 544, 545, 25 Okla. 353.

"The 'jurisdiction' to consider causes de novo, on appeal, and to decide them on the law and the evidence according to the right of the case, independent of the rulings and judgment of the lower court, is original and not appellate. In re Burnette, 85 Pac. 575, 577, 73 Kan. 609."

It is manifest, from a consideration of the purpose of the Constitutional Convention in limiting the Supreme Court to jurisdiction "properly belonging to a court of appeals," that it meant to confer solely the jurisdiction to review appeals upon record. Taking these definitions in the law existing when the Constitution was framed, it is manifest that the court was not intended to exercise any class of original jurisdiction whatever. As to other courts, the Legislature was directed to divide the state into as many convenient districts as the public service required, and to have terms of court held in each county at least twice in each year. Appeals from each of these counties are prosecuted at the option of the litigant to the Supreme Court under conditions prescribed by law. Necessarily a great number of appeals are brought to the Supreme Court for decision. It was the purpose of the Constitutional Convention to have a court of review with power to revise or reverse and remand a case purely upon questions of law entirely independent and apart from the surrounding influences that behedge a trial court. Necessarily in the trial of issues of fact many factors enter the court house calculated to disturb the cool, clear, and correct judgment of the issues involved.

The Supreme Court was created for the purpose of correcting mistakes and errors made under such circumstances, and it was to be entirely set apart from the elements of prejudice and passion that sometimes enter the trial courts despite the best effort to avoid them.

It is uniformly conceded that the power to disbar an attorney is a judicial power, and must be exercised in a judicial proceeding in which notice is given and full opportunity to be heard. If it were not, the court could not exercise it at all under section 2 of the Constitution. Such a proceeding must be original in its initiation or institution. The court that decides the issues must necessarily exercise an original jurisdiction as distinguished from an appellate jurisdiction. The proceeding can be appellate only when there has been an original trial. A proceeding of a judicial character cannot be both an original proceeding and an appellate proceeding at the same time. Before any court can exercise an appellate jurisdiction, some other court must have exercised an original jurisdiction.

In Ex parte Garland, 4 Wall. 333, 378, 18 L. Ed. 370, it is said: "The profession of an attorney and counsellor is not like an office created by an act of Congress, which depends for its continuance, its powers, and its emoluments upon the will of its creator, and the possession of which may be burdened with any conditions not prohibited by the Constitution. Attorneys and counsellors are not officers of the United States; they are not elected or appointed in the manner prescribed by the Constitution for the election and appointment of such officers. They are officers of the court, admitted as such by its order, upon evidence of their possessing sufficient legal learning and fair private character. It has been the general practice in this country to obtain this evidence by an examination of the parties. In this court the fact of the admission of such officers in the highest court of the states to which they respectively belong,

for three years preceding their application, is regarded as sufficient evidence of the possession of the requisite legal learning, and the statement of counsel moving their admission sufficient evidence that their private and professional character is fair. The order of admission is the judgment of the court that the parties possess the requisite qualifications as attorneys and counsellors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct. They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded. Ex parte Heyfron, 7 How. (Miss.) 127; Fletcher v. Daingerfield, 20 Cal. 430. Their admission or their exclusion is not the exercise of a mere ministerial power. It is the exercise of judicial power, and has been so held in numerous cases. It was so held by the Court of Appeals of New York in the matter of the application of Cooper for admission. Matter of Cooper, 22 N. Y. 81. 'Attorneys and counsellors,' said that court, 'are not only officers of the court, but officers whose duties relate almost exclusively to proceedings of a judicial nature. And hence their appointment may, with propriety, be intrusted to the courts, and the latter in performing this duty may very justly be considered as engaged in the exercise of their appropriate judicial functions.' . . . The attorney and counsellor being, by the solemn judicial act of the court, clothed with his office, does not hold it as a matter of grace and favor. The right which it confers upon him to appear for suitors, and to argue causes, is something more than a mere indulgence, revocable at the pleasure of the court, or at the command of the legislature. It is a right of which he can only be deprived by the judgment of the court, for moral or professional delinquency.''

It is said, however, that the case of Ex parte Brown, 1 How. 303, is an authority for the jurisdiction of the Supreme Court to try a disbarment proceeding. While that case was decided after the Constitution of 1832 was adopted, it was decided so recently thereafter that it is quite probable that the limitation of the jurisdiction of the Supreme Court contained therein was overlooked. At all events, it was not considered, so far as the report of the case shows. However, the statutes of the state then existing conferred expressly upon the Supreme Court the power to admit attorneys to practice and the power to disbar them. Hutchinson's Code, page 424. And it is manifest, to my mind, that the expressions contained in the opinion of Ex parte Brown, supra, as to the jurisdiction of the courts were based upon the fact that they had power to admit and disbar by statute, and the general rule prevailing that a court which has power to admit usually has power to disbar, unless there is some statute to the contrary. In other words, the Supreme Court was proceeding upon the idea that the power to disbar was expressly conferred by statute, and also that they had the inherent power to disbar, because it had the power to admit attorneys to practice. In 6 C. J. 580, section 37, it is said: "It is well settled that a court authorized to admit an attorney has inherent jurisdiction to suspend or disbar him for sufficient cause, and that such jurisdiction does not necessarily depend on any express constitutional provision or statutory enactment." In the same work, page 582, it is said: "Under the common law, courts that have jurisdiction to admit attorneys have jurisdiction also to disbar them; and conversely a court that has no jurisdiction to admit attorneys to practice has no jurisdiction to disbar them, the jurisdiction to admit and disbar being deemed correlative. But from this it does not follow that none other may be authorized to do so. Formerly, each court might punish or disbar for itself, but its judgment was not

effective in any other court. This was remedied in England by statute, and by the statutes of some of the states declaring such judgments effective 'in the courts of all other countries.' "

It is impossible to deduce any inherent power to entertain a proceeding original in its nature and character from the grant of appellate power. The word "inherent" is used in the sense of implied. An inherent power is one that is necessary to the exercise of a granted power. In other words, where a power is granted without providing the means for its exercise, the grant may be construed to give, by implication, power necessary for the exercise of the granted power so as to make it effective. Used in this sense, the word "inherent" is unobjectionable, but if "inherent" is to be given the effect of an unlimited reservoir of power undefined in its nature and extent, which the court may reach into as an excuse for doing what it may deem desirable, it is objectionable. The doctrine of inherent power in the sense of independent of constitutional grant is most dangerous and had its origin among despots. When a court is given only a limited power, as it is in the section granting the Supreme Court, or rather defining, its jurisdiction, it is expressly limited to such power as belongs properly to a court of appeals. It could not be extended by a construction to embrace more than the necessary means of carrying out the appellate power expressly granted. The restriction to appellate power to such as properly belongs to an appellate court negatives any inherent power to entertain an original proceeding. Fortunately, our court has defined the inherent powers of a court, or the nature of inherent powers. In Fuller v. State, 100 Miss. 811, 57 So. 806, 807, 39 L. R. A. (N. S.) 242, Ann. Cas. 1914A, 98, at page 817, of the Mississippi Report, it was said: "The inherent powers of a court are such as result from the very nature of its organization, and are essential to its existence and protection, and to the due administra-

tion of justice. Watson v. Williams, 36 Miss. 331; In re Waugh, 32 Wash. 50, 72 Pac. 710; 8 Am. & Eng. Ency. Law, 28; 4 Words and Phrases [First Series], 3605. It cannot be said that power to suspend the execution of a sentence is essential to the existence or protection of a court, or that it is essential to the due administration of justice, and consequently it has no such inherent power.''

In Words and Phrases, Second Series, vol. 2, page 1070, inherent jurisdiction is defined as follows: ''By the term 'inherent jurisdiction' of the chancery court is meant that jurisdiction and procedure of the high court of chancery of England which was adopted in this state as the jurisdiction of the chancery court before the cession act. J. W. Kelly & Co. v. Conner, 123 S. W. 622, 627, 122 Tenn. 339, 25 L. R. A. (N. S.) 201.''

The definition of inherent power is taken from Fuller v. State, supra, by the editor, and is the only definition of inherent power in this series of Words and Phrases.

In the Fuller case, the case cited, viz. In re Waugh, 32 Wash. 50, 72 Pac. 710, was a disbarment proceeding brought in the Supreme Court of Washington, which had a statute authorizing the court to license and disbar. The proceeding was for disbarment for some offense committed against the Supreme Court and in the Supreme Court. In the syllabus to the case in the official report, it is said: ''The Supreme Court has no jurisdiction of proceedings for the disbarment of an attorney, either under constitutional authority, or by virtue of its inherent powers, although the attorney may have perpetrated a fraud upon the superior court in gaining admission to practice.'' At page 51 of 32 Wash., 72 Pac. 710, the court said: ''It is contended by the relator that this court has inherent power to protect itself from fraud, and will exercise summary jurisdiction over its attorneys, who are in a sense officers of the court. The inherent power of a court is an unex-

pressed quantity and an undefinable term, and courts have indulged in more or less loose explanations concerning it. It must necessarily be that the court has inherent power to preserve its existence and to fully protect itself in the orderly administration of its business. The inherent power will not carry it beyond this. The case In re Lambuth, 18 Wash. 478, 51 Pac. 1071, has been called to our attention as sustaining the contention that this court has jurisdiction in disbarment proceedings; and language was certainly used in that case which would tend to sustain this contention. But, outside of the fact that the disbarment proceeding was entertained by the court, what was said in that case was pure dictum, as the question of jurisdiction was neither discussed nor raised in the trial of the cause." Further on the court said: "Ordinarily a court can enforce adequate protection from the wrongful acts of attorneys by imposing upon them the penalties prescribed by the law for a breach of duty due to the court, and if this can be accomplished under the law there is no necessity to resort to inherent power." On page 52 of 32 Wash., 72 Pac. 710, the court said: "The fraud practiced upon this court by gaining admission upon a certificate obtained by fraud is not such an assault on this court, in our opinion, as would warrant it in usurping the jurisdiction of the superior court upon the theory of inherent power. This court is a creature of the law, and, outside of the necessity which we have mentioned above, cannot possess any inherent power to exercise original jurisdiction which is exclusively conferred by law upon another tribunal." On page 54 of 32 Wash., 72 Pac. 710, 711, the court said: "Outside of constitutional limitations, the Legislature certainly has a right to prescribe the qualifications of attorneys. It may prescribe one forum to admit under such qualifications and another to disbar for reasons satisfactory to the legislative mind. In that respect, in the absence of constitu-

tional limitation, the legislative will is absolute. But it has not undertaken to interfere with the original jurisdiction conferred by the Constitution on the superior court. It has simply clothed this court with power of admission, and has been content to stop there, properly leaving the jurisdiction in disbarment where it is vested by preceding laws and by the Constitution.'' On page 55 of 32 Wash., 72 Pac. 710, 711, the court said: ''Whether this action be considered a criminal or a quasi criminal action, as it is held to be in some jurisdictions, or a civil action, involving a property right, as was indicated by this court in State ex rel. Rohde v. Sachs, 2 Wash. 373, 26 Pac. 865, 26 Am. St. Rep. 857, the respondent has a right to have this cause tried by the superior court and reviewed by this court on appeal. This is in harmony with both the letter and the spirit of the law, which created one court a trial court with original jurisdiction, and the other, with certain specified exceptions, a court of appellate jurisdiction.''

It is true that the Washington court subsequently held that, as to offenses committed against the Supreme Court itself, the court had jurisdiction to disbar an attorney and granted this power under its inherent powers. See In re Robinson, 48 Wash. 153, 92 Pac. 929, 15 L. R. A. (N. S.) 525, 15 Ann. Cas. 415. The Waugh case was not overruled, but was distinguished in this case, but the court did assert in its opinion that it had the power to disbar in all courts in the state. The offense for which the attorney was arraigned and disbarred in that case was so gross and flagrant and insulting to the court that the court must have resented very strongly his conduct, and was doubtless not in the same cool, clear, and impartial frame of mind that the court was in when deciding the Waugh case, where the insult was not upon the Supreme Court itself. It may be conceded that the Supreme Court can protect itself from insult and its records from spoliation and prevent the interruption of its

business, not only by a contempt proceeding, but by striking the name of the attorney from its roll. That is quite a different thing from depriving an attorney of his right to practice law at all under any circumstances and anywhere. The right of an attorney in his profession and the rights of the public to an independent and fearless bar is too important and too necessary to the public welfare to admit of such far-reaching and uncontrolled power in this court.

As stated above, in section 156 of the Constitution, the circuit court, being given all original jurisdiction not given by the Constitution to some other court, has jurisdiction to disbar attorneys by virtue of the constitutional grant of power, as the Constitution does not provide either for the admission or disbarment of attorneys. So, at all events and under all circumstances, the circuit court has power to disbar, and this power cannot be taken from the circuit court, while it may be granted concurrently to some other court.

The legislature of the state has required the attorney to present his license when he is examined for admission to the chancery court, and the chancery court admits him to practice in all courts of the state. Section 3686 of the Code of 1930 provides that, when an attorney has completed his examination and been adjudged qualified to be an attorney, he is granted a certificate to the effect that he possesses the qualifications required by the examining board or the authorities of the university. The statute as to that reads: ''Which certificate said applicant shall present to the chancery court or chancellor of the county of the residence of said applicant, or of the county in which said applicant intends to practice, and said chancery court or chancellor shall in term time or in vacation have entered on the minutes of said court an order granting to the applicant license to practice law in all the courts, both of law and equity, in this state, upon taking by the

applicant of the oath prescribed by law." It was the Legislature, in the exercise of its authority, which pre-scribed the chancery court as the court which shall ad-mit attorneys to practice law. It is true that, after being so admitted, the applicant is required by section 3692 of the Code of 1930, to take an oath in each court after producing his license. This power to admit, under the authorities generally prevailing constituting the great weight of authorities, confers on the chancery court, by implication, the power to disbar for proper causes. Thus both the circuit and chancery courts have jurisdiction to disbar attorneys. It is true also that section 3703 of the Code of 1930 provides: "If any attorney or counselor at law be in default of record, or otherwise guilty of any deceit, malpractice or misbehavior, or shall wil-fully violate his duties, he shall be stricken from the roll and disbarred, and his license revoked by any court in which he may practice; and such person shall never afterward be permitted to act as an attorney or counselor in any court in this state." Of course, this section is to be restricted in its operation as to the courts that have original jurisdiction to try the offense. It is clear-ly not contemplated that a police court or a justice of the peace court, or other court of limited or inferior ju-risdiction, shall have the power to disbar an attorney. Under the language of the statute, they would have such power, but all the authorities that I have seen hold that such courts cannot disbar. It evidently means in any court of competent jurisdiction, or any court having jurisdiction of the offense and of the person, may en-tertain the proceeding. It certainly does not mean that an attorney appearing in a remote part of the state from his residence in a particular cause or court could there be adjudged of an offense and put on trial for disbar-ment for offenses not committed within that jurisdiction or affecting that court. The statute must be construed so as to harmonize with the other statutory provisions

pertaining to the jurisdiction and procedure, etc., in courts. It would, of course, not be competent for the Legislature to provide that the Supreme Court might exercise original jurisdiction. There are many statutes whose language is broad enough to confer jurisdiction upon any court, but they must be interpreted in the light of the other statutes, and the general policy and history of the state.

The Supreme Court has jurisdiction by a constitutional grant and not otherwise. There are many considerations, it seems to me, which will require the declining of jurisdiction in this court. A disbarment proceeding may be a very expensive proceeding to the attorney involved if he is carried from his home, and where his witnesses who know his general character best live, into the capital of the state or to some remote court in the state. It would be equivalent to depriving him of his practice, because he would be wholly unable to make a defense, There is much loose language in the books both as to consideration and as to jurisdiction in such proceedings.

While I think the above is sufficient to dispose of the question without going into foreign jurisdictions whose Constitutions, statutes, and public policies, are not familiar to us, still when, and if, we do, we will find that practically all courts that hold that the Supreme Court has jurisdiction in an original proceeding to disbar are founded upon either constitutional provision or statutory provisions under which the Supreme Court admits the attorney to practice, or under statutes authorizing that court to disbar him.

The Constitutions of the different states vary in important particulars upon the jurisdiction of their courts of final appellate jurisdiction. Many of them authorize the exercise of certain original jurisdiction in that court.

I cannot agree with the majority opinion that this proceeding is not a judicial trial. Under all the authorities it is a judicial proceeding. It requires that speci-

fications be made of misconduct or unprofessional acts committed for which, or on account of which, the disbarment is sought. The hearing, being judicial, must be governed as other causes as to evidence, etc. People v. Amos, 246 Ill. 299, 92 N. E. 857, 138 Am. St. Rep. 239; State v. McRae, 49 Fla. 389, 38 So. 605, 6 Ann. Cas. 580; Ex parte Garland, 4 Wall. 333, 18 L. Ed. 366.

I do not agree with the majority of the court that it is necessary to overrule Ex parte Brown, 1 How. 303. It has been already overruled, by necessary implication, by Watson v. Williams, 36 Miss. 331; Planters' Ins. Co. v. Cramer, 47 Miss. 200, Brown v. Carraway, 47 Miss. 668, and other cases cited in this opinion. Besides, at that time, attorneys could only be licensed by the Supreme Court, and, as a corollary of the power to license, whether the jurisdiction was rightfully conferred or not, the power to disbar was also conferred under the authorities already referred to. Furthermore, in that case, the Constitution was not referred to as limiting the jurisdiction of the court. That being true, that decision is not authority for the conditions existing at this time.

In Adams v. Bank, 75 Miss., at page 719, 23 So. 395, 396, Judge TRULY, speaking for the court, said: "The case of Huntley v. Winona Bank, 69 Miss. 663, 13 So. 832, strongly relied on, has no application. The constitutionality of the law therein considered was never discussed by counsel, or decided by the court, and therefore the decision is without weight as a precedent. The decision of the case not resting solely on the question of constitutionality of the state, that point was very properly not passed upon."

In Black's Law of Judicial Precedent, page 37, par. 10, it is said: "A decision is not authority as to any questions of law, which were not raised or presented to the court, and were not considered and decided by it, even though they were logically present in the case and

might have been argued, and even though such questions, if considered by the court would have caused a different judgment to be given.''

Also I do not see any necessity for overruling the case of Ex parte Cashin, 128 Miss. 224, 90 So. 850, for in that case the only point before the court for decision was as to the sufficiency of the notice given to the attorney being disbarred. The court in that case distinctly recognized that it was a judicial proceeding, and that notice was required. So far as the points of the case are concerned, that case is unimportant and does not affect this case.

However, in Ex parte Redmond, 156 Miss. 439, 125 So. 833, the court recognized it was a judicial proceeding, civil in form, but criminal in substance. At page 835 of 125 So. 156 Miss. 439, the court said: ''A disbarment proceeding is not strictly either a civil or criminal proceeding, but is akin to both. In form it is civil, but in substance it is criminal; for, though disbarment is for the protection of the courts, the legal profession, and the public, its effect on an attorney disbarred is the same as if his disbarment were a punishment for wrongdoing, and the rule, even in ordinary civil cases where the defendant is charged with fraudulent conduct, is that his guilt must be proved by clear and convincing evidence.''

In Hayburn's Case, 2 Dall. 409, 1 L. Ed. 436, it was held that the court can exercise only judicial functions. See, also, U. S. v. Ferreira, 13 How. 48, 14 L. Ed. 45.

Appeals from disbarment proceedings are frequently brought to this court, and sometimes the judgment of the court of original jurisdiction has been reversed. See Ex parte Redmond, 120 Miss. 536, 82 So. 513, in which this court reversed the circuit court's holding that it had no jurisdiction to reinstate a disbarred attorney. If it was not a judicial proceeding, it was not appealable here. See Illinois Cent. R. Co. v. Dodd, 105 Miss. 23,

61 So. 743, 49 L. R. A. (N. S.) 565, and Board of Sup'rs of De Soto County v. Pidgeon-Thomas Iron Co., 114 Miss. 274, 75 So. 117.

The right to practice any profession is a matter of public concern, and it does not lie with the courts to exercise any inherent control over the subject contrary to the statutes passed by the Legislature. A lawyer's rights, under the theory of the majority opinion in the case at bar and the decisions relied on in that opinion, can only exist by the courtesy of the judge of the court. The rights thus involved cannot be thus subject to the whim and caprice of any judge, nor of any court. Lawyers do not exist for the benefit of the courts solely nor even principally, but for the benefit of the citizen. The Constitution gives the citizen a right, without any lawyer whatever, to conduct his own case in any court of the state. Section 25 of the Constitution provides: "No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both." No court can refuse to hear such party appearing and presenting his or her cause to the court. Therefore the existence of attorneys is not essential to the functioning of the courts, and this is recognized by the Constitution, the source of all power of every department or office of government, whether such office be a judicial office, or not.

As a matter of fact, many cases in inferior courts, such as justice of the peace, and other inferior courts, are so conducted and justice administered. Section 26 of the Constitution gives like right to be heard by himself or counsel or both, in all criminal prosecutions.

It is not necessary, therefore, for any court to have a lawyer to aid in the discharge of its functions in administering justice. It is, of course, highly convenient and desirable, but not essential.

The existence of lawyers is, of course recognized by the Constitution, as stated in the majority opinion. An applicant to practice law must have certain qualifications, and the judges of the several superior courts must be lawyers having practiced five years before being elected for that position. It is manifest therefore that any person having the necessary legal learning to fill the office of judge of the superior courts must have sufficient legal knowledge and skill to conduct a lawsuit. A lawyer's function, however, is not limited to the courts. He serves a very useful, not to say essential, function in the business life of the country. In this modern age many of the best lawyers of the country seldom go into the courts for the trial of cases. They advise their clients, prepare their contracts, and other legal papers, and pass upon titles and legal rights, and are so essential to the existence of society that society, as distinguished from the courts, has a vital interest in their existence, and the conditions under which they shall follow their profession. The right of a lawyer to pursue his profession and reap the fruits and emoluments thereof can only be taken from him by judicial trials.

This government never intended to place any arbitrary power and uncontrolled discretion anywhere. It is contrary to conception of our government that such power exists beyond the legislative control. The people, in framing the Constitution, retained the right to limit the legislative power, and have done so in many instances. The doctrine of inherent power, in the sense that it means uncontrolled power, is one of the most dangerous to free government that can be imagined. The examination and study of constitutional law and government has rather impressed me that the restraints imposed by law for the public good are frequently broken through by officers exercising power. It seems to be a baneful tendency among men to want unrestrained power.

The framers of our Constitution, aware of this tendency, sought to restrict and limit the delegated powers, and did, if language means anything. But there must be, in every government, somebody who is the final judge of the meaning and effect of these restraints. The court of final appeals in this state has therefore been delegated with the power to assume such office, and to pass upon the meaning of constitutional restraints. No danger can come from the exercise of granted powers, for the exercise of these is by common consent, and their abuse may be easily seen and proper corrections made. But, when implications are resorted to, it is not easily seen where they will lead. Usurpation is one of the most deadly political sins, and is scarcely less dangerous than treason itself. The doctrine of inherent power is doubly dangerous when exercised by a body over whose action no other tribunal can pass judgment. The Supreme Court of Mississippi is the body which passes finally upon all questions of state law, including its own powers. Every other body is legally bound by its decisions upon such questions, and it may usurp power by drawing to itself powers not conferred which can only be corrected by constitutional amendments, and it cannot be wholly corrected by such amendment. The amendment will only be effective in the future, but what is done by the action of usurpation until the amendment becomes effective becomes of force and cannot be remedied at all. The rights of life, liberty, and property, within the limits of state action, can be wholly destroyed in certain cases and persons, if the court may assume powers not conferred upon it. To serve temporary ends or purposes, however pressing the necessity may appear, should not cause us to depart from the limitations placed upon our power and jurisdiction. The Constitutional Convention was a body of wise and experienced men, and they well knew that the triers of fact would often be subjected to temptations by popular pressure, and that

they would sometimes be influenced by a dominant and dictatorial public opinion. They intended to have a tribunal removed from the atmosphere of the trial and away from the influence of the passions of the hour, to review the trial so that impartial justice should be done in all cases. It was not the purpose of the convention to have this court exercise any original jurisdiction whatever, and this court has, in effect repeatedly so declared. Every citizen should have absolute fair and impartial justice, and, if he gets this, in many cases it will be necessary to have it reviewed by another court than the one which acted in the atmosphere of public opinion and passion. This court has frequently reversed cases because of the evils of pressure by an indignant and dominant opinion existing at the time of the trial, but which could not reach the Supreme Court. This court is not different from other institutions where fallible men must function. We should be secluded from the atmosphere of the trial and deliberate in a place that "is imperviously padded against popular clamor and passion."

I am therefore convinced, beyond all reasonable doubt, that we have no power to entertain original jurisdiction in this proceeding.

I know the judges of this state, and I believe each of them will exercise their powers courageously and wisely as to any who is false to his trust and is unworthy of the profession. I think that we should leave to them original disbarment proceedings with the right to have their actions reviewed in the calm deliberate atmosphere of this court.